UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MARIANNE M. HOFFKINS,

                    Plaintiff,          DECISION AND ORDER
                                                        06-CV-6403-CJS
      -vs-

MONROE 2 ORLEANS BOCES,

                    Defendant.

---

**APPEARANCES**

For Plaintiff:                  Kevin L. Hoffkins, Esq.
                                  191 Post Road West
                                  Westport , CT 06880
                                  Tel: (203) 221-2684

For Defendant:                Donall Gerard O'Carroll, Esq.
                                  Webster Szanyi, LLP
                                  1400 Liberty Building
                                  Buffalo , NY 14202
                                  Tel: (716) 842-2800

**INTRODUCTION**

This employment discrimination case is before the Court on Defendant's motion (Docket No. 53)  for summary judgment. For the following reasons, Defendant's motion is granted.

**FACTUAL BACKGROUND**

The following facts are taken from the parties' submissions and viewed in the light most favorable to the nonmoving party. Plaintiff was hired by BOCES in February 1998 as a special education teacher in the department called, "Department of

Exceptional Children." Plaintiff was then 49 years of age. For the next three years, Plaintiff received positive reviews from her supervisor, Kathleen Cummings. In 2001, Plaintiff was granted tenure on the basis of recommendations from Cummings and the department's director, Joseph Kelly. Plaintiff now claims that both Cummings and Kelly discriminated against her based on her age.

At the conclusion of the 2002-03 school year, funding for BOCES' Department of Exceptional Children declined, as did enrollment, necessitating elimination of a number of teaching positions in the preschool special education programs. A number of teachers were laid off based on seniority, as required by New York State Education Law section 2510. As a result of her seniority, Plaintiff was not laid off, but was guaranteed employment at BOCES for the 2003-04 school year. Since her position in the preschool special education program had been eliminated due to budget cuts, Plaintiff was considered for other positions for which she was qualified. Plaintiff does not claim that anything discriminatory occurred as a result of the manner in which the layoffs were handled by BOCES. (Hoffkins Dep., at 70.) Each individual teacher who was not laid off (called an "unassigned teacher"), was asked to complete a "Declaration of Interests in an Assignment Change" form, a preference sheet listing each of the programs within the department for which a position was available. Anyone on the unassigned teacher list still had to participate in an interview process prior to being awarded a position. Seniority only played a role for such transfers if the qualifications of all the candidates were equal. (Hoffkins Dep., at 66-67.) Plaintiff conceded at her deposition that qualifications of all of the unassigned teachers were equal. (Hoffkins Dep., at 74.) On her Declaration, Plaintiff checked off each program listed including both the elementary

and secondary 8:1:2 programs[1] and the Therapeutic Day program. Following interviews, Plaintiff was offered the 8:1:2 program in May, and accepted the position. (Hoffkins Dep., at 82.) Subsequently, at the end of the summer, and before the school programs began, Plaintiff was offered the Therapeutic Day Program, which she declined. (*Id.*)

On August 19, 2003, 4 days prior to the start of the school year, Plaintiff submitted a letter of resignation to Kelly. Throughout the summer of 2003, Plaintiff had continued to believe she would be offered a position in the preschool program. (Hoffkins Dep., at 86.) Plaintiff informed Kelly she was reluctant to fill the position in the 8:1:2 program because of a lack of training and her concern about safety. (Hoffkins Dep., at 167.)

On August 26, 2003, after she had resigned, Plaintiff was offered a substitute position in the Early Intervention Program. The position became available when the regular teacher for that program, Nancy McMullen, took a two-month leave following the unexpected death of her spouse. Cummings did not initially support having the position offered to Plaintiff. Since Plaintiff had resigned her prior position four days before the start of school, Cummings concluded that Plaintiff lacked concern for the students and was inflexible regarding assignments. (Cummings affidavit ¶¶ 6-7.)[2] However, following

---

[1] BOCES' Director of Exceptional Children, Joseph A. Kelly, said that the 8:1:2 program refers to the ratio of eight students and one teacher and two assistants or paraprofessionals. It is a junior high level class with a maximum of eight students. (Kelly Dep., at 22.)

[2] Plaintiff takes the curious position that whether Cummings supported hiring Plaintiff for the temporary position is not an undisputed fact because, "[t]he only evidence on the record is the testimony of Ms. Cummings. Her testimony alone is not conclusive and does not create undisputed facts." (Plaintiffs Statement of Material Fax and Those Controverted by the Plaintiffs ¶ 51.) Plaintiff's position is contrary to the requirements of Fed. R. Civ. P. 56, and the Court's local rule 56.1. *See, Covelli v. National Fuel Gas Dist. Corp.*, No. 99-CV-0500E(M), 2001 WL 1823584 (W.D.N.Y. Dec. 6, 2001). In analyzing the present motion, the Court has deemed admitted any factual assertion by Defendant that is not specifically disputed, with citation to evidentiary proof in admissible form.

consultation with her colleagues, Cummings came around to the point of view that offering Plaintiff the temporary position would not, in the long run, be detrimental and, in the short run, would ensure that the class could continue without interruption for a lengthy hiring process, or training a new substitute. Plaintiff filled that position from September 2003 through November 2003 when McMullen returned to work.

After funding became available for the hiring of additional teachers, Micki Abbatiello, who was responsible for hiring and recruiting at BOCES, prepared vacancy announcement checklists on December 5, 2003 (for a special education itinerary teacher in preschool), on December 16, 2003 (for a half-time position in preschool) and on February 17, 2004 (for a special education teacher in a preschool classroom). Positions were advertised and, following interviews, individuals were employed to fill the positions. Prior to filling those positions, Abbatiello discussed with Cummings whether they should consider Plaintiff for any of the positions. Plaintiff was considered by Cummings for those positions, however, Cummings decided it would not be in the best interests of the children to hire her. Cummings expressed the concern that if hired for a preschool program, and later asked to teach in another grade level or program, Plaintiff would again resign. Accordingly, she made the decision not to hire Plaintiff for any of the open positions.

The three individuals hired were Julian Driscoll, Melinda Hyde and Andrea Mastrella. Driscoll had a bachelor of science degree in special education and was certified in special education. She had experience as a student teacher with first, fifth and sixth grades. Hyde also had a bachelor of science in education with a major in exceptional education and she too was certified in special education and had previous

experience working with children with disabilities. Mastrella had a bachelor of science in social work and a bachelor of arts in early childhood education and was also certified in elementary education and special education. She also had previous experience working with students with academic deficits, and additionally she had training in crisis interventions. Further, she had previous experience as a socio-therapist working in therapeutic preschool program providing intervention to high-risk children and their families.

Cummings testified that she had about 25 employees working directly for her. Some were over 40 in age, some were 50 and some over 60. (Cummings Dep., at 50-52.) Plaintiff disputes Defendant's assertion that Cummings never once told Plaintiff she was too old for the job, or said anything to indicate an animus toward older workers. (Defendant's Statements of Undisputed Material Facts ¶ 76; Plaintiffs Statement of Material Facts and Those Controverted by the Plaintiff ¶ 76.) Plaintiff's deposition transcript indicates that from September 2003 through November 2003, Cummings never said anything to her to indicate she was too old for the job. (Hoffkins Dep., at 122.) Further, Plaintiff does not cite to any evidence that Cummings said anything in relation to Plaintiff being too old for the job outside that time frame. Plaintiff filed a complaint with the Equal Employment Opportunity Commission on October 21, 2004.

**STANDARDS OF LAW**

*Summary Judgment*

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice, § 56.11[1][a] (Matthew Bender 3d ed.). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *See Amaker v. Foley,* 274 F.3d 677 (2d Cir. 2001); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once that burden has been met, the burden then shifts to the non–moving party to demonstrate that, as to a material fact, a genuine issue exists. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" only if the fact has some affect on the outcome of the suit. *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue exists as to a material fact, the

court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc*., 369 U.S. 654, 655 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993); *Anderson*, 477 U.S. at 248-49; *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 123 S.Ct. 1160 (2003); *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir. 1990). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986). Rather, evidentiary proof in admissible form is required. Fed. R. Civ. P. 56(e). Furthermore, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

Of course, it is well–settled that courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997) (citations and internal

quotations omitted). However, the general rule holds and a plaintiff may not defeat a motion for summary judgment merely by relying upon "purely conclusory allegations of discrimination, absent any concrete particulars which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997) (citations and internal quotations omitted); *Meri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).

### *Age Discrimination in Employment Act (ADEA)*

To establish a *prima facie* case in an ADEA action, a plaintiff must show that "(1) he was within the protected age group; (2) he was qualified for the job; (3) he was discharged; and (4) the discharge occurred under circumstances giving rise to an inference of age discrimination." *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 83 (2d Cir. 1990) (citation omitted). The ADEA protects employees who are "at least forty years of age." 29 U.S.C. § 631 (1989). Under the ADEA, it is unlawful for an employer to discharge an employee because of that employee's age. *See* 29 U.S.C. § 623(a)(1). The Supreme Court has observed that the substantive prohibitions under the ADEA mirror those under Title VII of the Civil Rights Act of 1964. *See Lorillard v. Pons*, 434 U.S. 575, 584 & n. 12, 55 L. Ed. 2d 40, 98 S. Ct. 866 (1978). Accordingly, the Second Circuit has held "that the evidentiary framework measuring discrimination under the ADEA borrows from Title VII case law." *Hollander*, 895 F.2d at 83. Therefore, the Court employs the burden-shifting analysis from the Supreme Court's Title VII jurisprudence as set out in *McDonnell Douglas Corp. V. Green*, 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

> Under *McDonnell Douglas* and *Burdine*, the plaintiff first must establish a *prima facie* case of discrimination. The burden then shifts to the employer

> to counter the *prima facie* case by advancing a legitimate, non-discriminatory reason for its actions. The plaintiff in turn may attack the employer's explanation by showing evidence that the purported non-discriminatory reason was not true and in fact was a pretext for discrimination. *See Burdine*, 450 U.S. at 252-53, *McDonnell Douglas*, 411 U.S. at 802-04.

*Hollander*, 895 F.2d at 83.

## ANALYSIS

Defendant contends that Plaintiff has failed to make a *prima facie* case of age discrimination. There is no dispute that Plaintiff was within the protected age group and was qualified for jobs at BOCES. At issue is whether Plaintiff was terminated, and if so, whether she was terminated under circumstances giving rise to an inference of age discrimination.

### A

On the issue of discharge, the evidentiary proof shows that, although Plaintiff's position was eliminated, she was offered, first, a position in the 8:1:2 classroom, then in the Therapeutic Day program. Plaintiff contends, however, that this amounted to a Hobson's choice and she was, therefore, effectively constructively discharged as a result. (Pl.'s Mem. of Law, at 2.) Constructive discharge occurs "when the employer, rather than acting directly, 'deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.'" *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983) (quoting *Young v. Southwestern Savings and Loan Assn.*, 509 F.2d 140, 144 (5th Cir. 1975).)

> In determining whether or not a constructive discharge has taken place, "the trier of fact must be satisfied that the…working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Alicea Rosado v. Garcia*

>   *Santiago*, 562 F.2d 114, 119 (1st Cir. 1977); *accord, Bourque v. Powell Electrical Mfg. Co.*, 617 F.2d 61 (5th Cir. 1980).

*Pena*, 702 F.2d at 325. Plaintiff contends that an 8:1:2 classroom was dangerous and to leave her alone "with a group of older students who could be dangerous, and without the tools to deal with their particular problems, was patently unreasonable." (Pl.'s Mem. of Law, at 3.) Of course, Plaintiff would not have been alone in the classroom—she would have had two aides with her. Moreover, Plaintiff's argument does not address the offer she received to work in the Therapeutic Day Program, nor does she make any allegations, let alone provide any evidentiary proof, as to the difficulties or unpleasantness of the conditions in 8:1:2 program, which would be severe enough to force her to resign.

Accordingly, the Court rejects her constructive discharge argument. The evidentiary proof before the Court on this motion shows that Plaintiff *resigned* after rejecting both job opportunities offered. Thus, she has failed in her burden of proving that she was discharged under circumstances giving rise to an inference of age discrimination. As Defendant points out, the same individuals who hired Plaintiff, at age 49, after she was protected by the ADEA, are the same two individuals whom she is accusing of age discrimination.

**B**

Following the December 11, 2008, oral argument, Plaintiff's counsel moved for leave to submit what he labeled as newly acquired evidence. The evidence consisted of an affidavit from another teacher, Mary Ann Leroy ("Leroy") and counsel claimed that the evidence was not previously available. (Docket No. 75, at 3.) Leroy's attached

affidavit showed that she was a prior BOCES employee whose position was eliminated in the spring of 2003. She was offered a position in the day program, but did not feel she "was properly qualified to teach this group." (Leroy Aff. ¶ 3.) Leroy states in her affidavit:

> I expressed to the supervisory staff at Monroe2-Orleans BOCES that I would very much prefer to continue to work in the pre-school or in any other program in which I was more qualified. I was told that over the summer more positions might become available as other staff took retirement or quit. I was informed that it would be perfectly acceptable for me to accept another position later should it become available.

(*Id*. ¶ 4.) BOCES objects to the Court's consideration of this affidavit on the ground that it was not unavailable during discovery.

The Court first addresses whether it should consider the Leroy affidavit. In that regard, the Court finds the following language from *Gotlin v. Lederman*, No. No. 04-CV-3736 (ILG), 05-CV-1899 (ILG), 2007 WL 1429431 (E.D.N.Y. May 7, 2007), instructive:

> In other words, an application to reopen discovery should be denied where the moving party "has not persuaded th[e] Court that it was impossible to complete the discovery by the established deadline." *Gavenda* [*v. Orleans County*], No. 95-CV-0251E (SC),1996 WL 377091, at *2 [(W.D.N.Y. Jun. 19, 1996)]; *see King* [*v. Friend of Farmer, Inc.*, No. 97 Civ. 9264 BSJ RLE], 2000 WL 290355, at *1 [(S.D.N.Y. Mar. 21, 2000)] ("party seeking to reopen discovery must show why the court's deadlines could not 'reasonably' have been made 'despite [its] diligence'") (quoting Charles Alan Wright, et al., 6A Federal Practice & Procedure § 1522.1 at 231 (2d ed.1990); *Goss v. Long Island R.R. Co.*, No. 94 CV 4927, 1996 WL 743350, at *1 (E.D.N.Y. Dec. 12, 1996) (denying motion to reopen discovery); Fed. R. Civ. P. 16 Advisory Comm. Notes to 1983 Amendment (stating that under Rule 16(b), "the Court may modify the [discovery] schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). Simply put, "[d]iscovery should not be extended when a party had an ample

opportunity to pursue the evidence during discovery." *Harris v. Computer Assocs. Int'l, Inc.*, 204 F.R.D. 44, 45 (E.D.N.Y.2001) (collecting cases).

*Gotlin*, 2007 WL 1429431, *2-3. In this case, the scheduling order closed fact discovery as of February 29, 2008. (Scheduling Order, Docket No. 34.) Argument on the pending summary judgment motion was heard on December 11, 2008. Plaintiff's counsel states that the relevance of Leroy's testimony became apparent to him only after BOCES filed its motion for summary judgment on July 11, 2008, in which BOCES claimed that it did not hire Plaintiff for any of the vacant positions in fall 2003 because of her lack of versatility. (Hoffkins Aff., Docket No. 78, ¶ 4.) However, BOCES has countered by filing an affidavit, and exhibits, contesting the claim that BOCES "lack of versatility" basis for not hiring Plaintiff was only revealed in July 2008. In that regard, BOCES points to its response where it explained:

> a special education teaching certificate is broad. Exclusivity is impractical in a BOCES setting. BOCES needs to alter assignments and can do so legally since the special education certification is broad. Hoffkins exclusive interest in the preschool student program limits the BOCES in managing its programs.

(BOCES Verified Answer, *Hoffkins v. Monroe 2 Orleans Board of Cooperative Educational Services* (Equal Employment Opportunity Commission, Dec. 20, 2004), at 3, attached as Ex. A to Donall O'Carroll letter to the Court (Feb. 5, 2009).) In addition, during her pretrial deposition, Cummings testified as follows:

> Q. So, now, when it came time for you to hire new people because of these new referrals, why was Mrs. Hoffkins not offered the position?
>
> A. For some of the same reasons, that I had concerns about her employment in the substitute piece. I still had concerns about the efficacy and the best interest of the kids not taking a position just prior to the

> beginning of the school year. I had concerns about a person that has stated they could not do that behavior piece, that 8:1:2 program, knowing very well that if there is a reduction in my staff most likely she would be going back to a school-age program and needed to be versatile.
>
> She had resigned. And I believe that was her choice to resign from our agency. So, that was really it. You know, I had reservations.

(Cummnings Dep., at 46-47.) That deposition took place on January 9, 2008, and Plaintiff's counsel was present. (Cummings Dep., at 1-2.) Therefore, the Court is not persuaded that BOCES defense strategy was unknown to Plaintiff's counsel until July 11, 2008. Further, with regard to locating Leroy, Plaintiff's counsel states that the only way he was able to find Leroy was through his client's inquiry with Leroy's last known employer, and that route did not produce results until November 2008. (Hoffkins Aff., Docket No. 78 ¶¶ 12-15.) Evidently, counsel did not employ any of the discovery tools available under the Federal Rules of Civil Procedure. The Court, thus, determines that Plaintiff has not shown good cause for her failure to produce evidence from Leroy prior to November 2008.

Moreover, even if the Court did consider Leroy's affidavit, which does not even mention her age, it does not support Plaintiff's claim that Leroy was offered a position under circumstances similar to Plaintiff's. Leroy's affidavit shows only that she made known her preference for working in the preschool program, was offered and accepted a position in the therapeutic day program, then was offered and *accepted* a different position "working with teenagers who had Asperger's Syndrome." (Leroy Aff. ¶¶ 4-5.) She then states, "I was never informed that *taking* this later position late in the summer would be deemed as unprofessional in any way, or that I was leaving the school in a

difficult position with no one to fill the day program." (Leroy Aff. ¶ 6 (emphasis added).) Leroy's affidavit shows that she took another position offered to her at BOCES, not that she quit four days before school started after stating she would take an offered position. Consequently, Leroy's affidavit does not provide evidence that Plaintiff was not hired because of age discrimination.

### C

Although Plaintiff's amended complaint claims only that she was wrongfully terminated as a result of her age (Amend. Compl. ¶ 10), at oral argument, Plaintiff's counsel advanced an alternate theory, that Plaintiff was not hired for a position that opened in early 2004, because of her age. Assuming, though not conceding, that Plaintiff had made out a *prima facie* case of discrimination as a result of not being hired, BOCES nonetheless contends that they had a legitimate, nondiscriminatory reason for not selecting her for a permanent position, even though they did hire her as a substitute. In that regard, BOCES argues that the other candidates were more qualified. Additionally, BOCES maintains that it was concerned that Plaintiff resigned from the 8:1:2 program, only four days before the start of school, and, further, refused an alternate assignment, that she had initially requested, to the therapeutic day program. As to the therapeutic day program, Plaintiff has not come forward with any evidentiary proof in admissible form establishing that the therapeutic day program had the same objectionable features that Plaintiff disliked about the 8:1:2 program.

On the question of why Plaintiff was suitable for the substitute position, but not a permanent position, BOCES offers four reasons. First, the substitute position came

open unexpectedly when the regular teacher's husband died unexpectedly. Hiring Plaintiff for the short-term was acceptable to BOCES since she had been in the system before and BOCES would not have to go through the hiring process. This served the best interests of the children by not delaying the start of the class. Second, Plaintiff was familiar with the curriculum and would not require a long training time, again benefitting the children. Third, because Plaintiff had been in the system previously, the parents of the children would have a comfort level with her. Finally, this was a substitute position, and as such, the concern regarding Plaintiff's versatility would not come up. On the question of versatility, BOCES' counsel explained that if one is certified to teach in this department, one is certified to teach in any of the programs in the department. She taught in the preschool, and did not want to go into the 8:1:2 program or any other program. BOCES feared that if she was rehired, and future funding cuts again required her to move to a nonpreschool program, she would again accept a position, hoping something in the preschool opens up, it does not, and she quits. This concern was not raised when she taught as a substitute at BOCES in the Early Intervention Program. The programs have a great deal of flux, and depend on enrollment and funding. The newly-hired teachers said they were willing to move from program to program as the needs of BOCES required. In contrast, Plaintiff had vividly demonstrated her inflexibility by accepting a position, then resigning from BOCES four days before the start of school.

      Even drawing all reasonable inferences in favor of the nonmoving party, *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000), and even assuming Plaintiff has made out a prima facie case of age discrimination by BOCES' failure to hire

her for a permanent position in 2004, the Court determines that Plaintiff has failed to come forth with evidentiary proof in admissible form showing that BOCES' proffered reasons for not hiring her was false and that it's decision was motivated, at least in part, by a discriminatory animus. Accordingly, even reading Plaintiff's amended complaint to include a cause of action for failure to hire her, the Court determines that BOCES is entitled to summary judgment.

## CONCLUSION

Accordingly, BOCES' motion (Docket No. 53) is granted. The Clerk is directed to enter judgment for BOCES and close the case.

IT IS SO ORDERED.

Dated: March 23, 2009
       Rochester, New York      Enter:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge